IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2015 Session

# MELANIE JONES, INDIVIDUALLY AND ON BEHALF OF MATTHEW H. v. SHAVONNA RACHELLE WINDHAM, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00442811      Robert Samual Weiss, Judge**

_____

**No. W2015-00973-COA-R10-CV – Filed March 11, 2016**
_____

This Rule 10 appeal stems from a vehicular accident involving a minor child who was struck by a van driven by the employee of a children's daycare. The child's mother filed suit alleging negligence against the employee-driver of the vehicle and asserted claims for negligent hiring, negligent retention, and negligence *per se* against the driver's employers. The mother also averred that she should recover punitive damages based on the conduct of the Defendants. The employers, the individual owners of the daycare, admitted vicarious liability for the negligence of their employee and moved for partial summary judgment on the direct negligence claims asserted against them. They argued that it was improper to proceed against them on an independent theory of negligence when they had already admitted vicarious liability. The employers, along with the employee-driver, also sought summary judgment with respect to the punitive damages claim. Although the trial court granted the employers' motion with respect to the direct negligence claims, it denied the motion with respect to the claim for punitive damages. On appeal, we reverse the trial court's dismissal of the direct negligence claims asserted against the employers and remand the case for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Circuit Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., joined. BRANDON O. GIBSON, J., filed a dissenting opinion.

C. Wesley Fowler and Jonathan O. Richardson, Memphis, Tennessee, for the appellant, Melanie Jones.

John D. Richardson, Memphis, Tennessee, for the appellees, Shavonna Rachelle Windham, Remark Chism, Kimberly Chism, Kare Enrichment Center, Kare Enrichment Center, Inc. #3, Kare, Inc., Kare III, Inc., and Academy Care.

## OPINION

### Background

On March 23, 2011,[1] Shavonna Windham ("Ms. Windham") struck a minor child with her vehicle while she was transporting children in accordance with her duties as a van driver for a local daycare. Less than a year following the incident, the minor child's mother, Melanie Jones ("Ms. Jones"), individually and on behalf the child, filed suit in the Shelby County Circuit Court seeking to recover for alleged personal injuries and damages. The complaint asserted that Ms. Windham was guilty of negligence and further alleged that her employers, Remark and Kimberly Chism ("Mr. and Mrs. Chism" and/or "Defendant Employers"), were liable for the actions Ms. Windham took "in the course and scope of her employment."[2] The complaint also sought recovery against the Defendant Employers directly, asserting claims against them for negligence *per se*, negligent hiring, and negligent retention. Further, the complaint asserted a claim for loss of filial consortium, as well as a claim for punitive damages against all of the Defendants.[3]

Following the filing of the complaint, the Defendant Employers and Ms. Windham (collectively, "the Defendants") filed an answer wherein they generally denied that they were liable. As is relevant to this appeal, however, the Defendant Employers admitted that the

---

[1] Although the initial complaint filed in this case identifies the date of the accident as March 24, 2011, it was undisputed in the summary judgment papers that the subject incident took place on March 23.

[2] We note that both complaints filed in this case name the following Defendants in addition to Ms. Windham: "Remark Chism," "Kimberly Chism," "KARE Enrichment Center," "KARE Enrichment Center, Inc. #3," "KARE, Inc.," "KARE III, Inc.," and "Academy Care." Specific allegations in the complaints suggest that Ms. Windham was employed by one of the KARE daycare entities rather than Mr. and Mrs. Chism directly. However, the undisputed facts established at summary judgment reveal that this was not the case. The Plaintiff's response to the Defendants' statement of undisputed facts did not dispute that Ms. Windham "was acting within the course and scope of her employment with Defendants, *Kimberly Chism and Remark Chism*, *individually and doing business as* Kare Enrichment Center, KARE I, KARE II, and KARE III." (emphasis added). We further note that in Mrs. Chism's deposition, Mrs. Chism testified that the KARE daycare centers were not incorporated at the time of the accident.

[3] We observe that in an amended complaint, Mr. and Mrs. Chism were also alleged to have been guilty of "negligent failure to screen, train, and test [Ms. Windham] during her employment." Additionally, Ms. Jones sought to recover damages for the Defendants' "negligent infliction of emotional distress causing mental anguish and emotional pain and suffering."

doctrine of *respondeat superior* applied. Within their answer, the Defendant Employers expressly conceded that they would be vicariously liable for any negligence that Ms. Windham had committed.

In light of their admission of vicarious liability, the Defendant Employers subsequently moved for partial summary judgment as to the direct negligence claims filed against them. Acknowledging that Tennessee courts had not ruled on the issue of whether direct negligence claims against an employer can survive the employer's admission of *respondeat superior* liability for the acts of its employee, the Defendant Employers proposed a rule under which a plaintiff would be prevented from proceeding on any direct negligence claim against an employer once vicarious liability has been admitted. The Defendant Employers, along with Ms. Windham, also sought summary judgment with respect to Ms. Jones' punitive damages claim.

Ms. Jones responded to the Defendant Employers' proposed rule by arguing that it was inconsistent with Tennessee's modified comparative fault scheme and existing state law. Moreover, she argued that even if the trial court were to adopt the proposed rule, the asserted claims of direct negligence against the Defendant Employers should be allowed to proceed in this case. In support of this position, she argued that in many states that followed the proposed rule, an exception existed when the direct negligence claims were accompanied by a claim for punitive damages. Ms. Jones argued that her claim for punitive damages was sufficient to survive summary judgment.

On February 25, 2015, the trial court entered an order adjudicating the motion for partial summary judgment filed by Ms. Windham and the Defendant Employers. That order granted the motion as to the direct negligence claims asserted against the Defendant Employers, but it denied that portion of the motion relating to the punitive damages claim. Although the trial court's order did not provide the specific legal grounds for its decision as required by Tennessee Rule of Civil Procedure 56.04, it is apparent to us that the court attempted to adopt the Defendant Employers' proposed rule when it granted summary judgment as to the direct negligence claims that were asserted against them.[4]

---

[4] Although the grant of summary judgment as to the direct negligence claims asserted against the Defendant Employers seems to clearly indicate that the proposed rule was adopted by the trial court, it is unclear why the trial court did not also dismiss the punitive damages claim asserted against the Defendant Employers in light of its decision to dismiss the direct negligence claims asserted against them. We recognize that the entirety of the asserted punitive damages claim would not be disturbed by the adoption of the proposed rule inasmuch as a liberal reading of the complaint leads us to acknowledge that a punitive damages claim was also asserted against Ms. Windham. However, we question how the punitive damages claim asserted against the Defendant Employers could be maintained in the absence of a direct claim asserted against them supporting an award of actual damages. *See Goodale v. Langenberg*, 243 S.W.3d 575, 585 (Tenn. Ct. App. 2007) (noting that "there

After the entry of the February 25, 2015 order, Ms. Jones moved the trial court to allow her to pursue an interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. When the trial court denied her request for relief, Ms. Jones next sought this Rule 10 extraordinary appeal, which we granted and limited review to the following issues:

1. May a jury apportion fault to an employer for direct liability based on negligent hiring, supervision or training of the employee where the employer admits vicarious liability or *respondeat superior* for the negligence of its employee and is, therefore, one hundred (100%) responsible (jointly and severally) for the fault of the employee; and,

2. Whether the trial court committed error by dismissing all claims against the employer for compensatory damages while allowing a claim for punitive damages [to] proceed against the employer.

Despite the limits that we placed on our review in granting this extraordinary appeal, the Defendants attempted to raise one additional issue in their appellate brief:

3. If the answer to issue number 2 is yes, should partial summary judgment be granted dismissing the punitive damage claim against the employer?

**Standard of Review**

This appeal requires us to review the propriety of the trial court's order granting partial summary judgment in the Defendant Employers' favor. Consequently, we apply the

---

can be no cause of action for punitive damages alone without 'actual damages[]'"). This may simply be an error on the part of the trial court incident to its adoption of the proposed rule. Nevertheless, because the court did not dismiss the punitive damages claim, one might surmise that the trial court was attempting to recognize the punitive damages exception to the proposed rule that is recognized in some states. Ms. Jones makes such an argument in her appellate brief. The trial court's supposed recognition of such an exception, however, is incongruous with its dismissal of the direct negligence claims against the Defendant Employers. Under the exception to the proposed rule that exists in some jurisdictions, the assertion of a punitive damages claim is the vehicle for allowing independent negligence claims to be maintained against an employer who has admitted vicarious liability. *See, e.g.*, *Durben v. Am. Materials, Inc.*, 503 S.E.2d 618, 619 (Ga. Ct. App. 1998) (noting that an exception exists where a plaintiff has a valid claim for punitive damages and that the employer is accordingly not entitled to summary judgment on the independent negligence counts). In terms of our review, it is not of ultimate consequence whether the trial court was attempting to adopt the Defendant Employers' proposed rule or was attempting to adopt the proposed rule but nonetheless recognize an exception for punitive damages. Both are legal determinations, and this Court has granted review to determine whether the proposed rule, with or without exceptions, is a viable complement to our law governing comparative fault.

standard of review applicable to summary judgment decisions. Summary judgment is appropriate "in virtually every civil case that can be resolved on the basis of legal issues alone." *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 844 (Tenn. 2010) (citing *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009); *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993)). "[It is] not appropriate when genuine disputes regarding material facts exist." *Id.* (citation omitted). Indeed, a motion for summary judgment should only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Because the trial court's ruling on a summary judgment motion is a question of law, we review the matter *de novo* without a presumption of correctness. *Revis v. McClean*, 31 S.W.3d 250, 252 (Tenn. Ct. App. 2000) (citing *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996)).

## Discussion

Tennessee's appellate courts have not yet addressed whether a plaintiff may proceed with a direct negligence claim against an employer when the employer has admitted vicarious liability. Courts from other jurisdictions are split on the issue. Some courts have adopted the Defendant Employers' proposed rule, and others have rejected it. Other courts have adopted the rule but recognized potential exceptions. Because there is a "fairly even split among jurisdictions" as to which way they have decided this issue, we will follow the lead of the Kentucky Supreme Court's recent decision in *MV Transportation, Inc. v. Allgeier*, 433 S.W.3d 324 (Ky. 2014), and refer to the conflicting rules as the "preemption rule" and the "non-preemption rule." *See id.* at 334 n.8 (noting that the court would avoid the use of the terms "majority rule" and "minority rule" because there appeared to be a "fairly even split among jurisdictions").

The preemption rule, which is the rule that the Defendant Employers urge us to adopt, is fairly straightforward in application. Once an employer has admitted vicarious liability for the actions of its agent, a plaintiff may no longer proceed against the employer on a direct negligence claim such as negligent entrustment or negligent hiring. *See, e.g.*, *McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995). Courts that adopt the preemption rule generally reason that evidence of independent negligence such as negligent hiring or retention becomes "unnecessary, irrelevant and prejudicial" once an employer has admitted vicarious liability. *Lee v. J.B. Hunt Transport, Inc.*, 308 F. Supp.2d 310, 313 (S.D.N.Y. 2004). The concern is that the independent negligence claims, which are often supported by prior bad acts of the employee, may be used "merely to permit the introduction of evidence intended unduly to influence the jury's decision on the issue of the [employee's] negligence." Stephen M. Blitz,

- 5 -

*Conduct Evidencing Negligent Entrustment is Provable Despite Admission of Vicarious Liability*, 17 Stan. L. Rev. 539, 542 (1965). Moreover, the independent negligence claims are considered to confer no benefit on the plaintiff once an employer has admitted vicarious liability. Upon an admission that one is vicariously liable, "the employer . . . becomes strictly liable to the plaintiff for damages attributable to the conduct of the employee." Richard A. Mincer, *The Viability of Direct Negligence Claims Against Motor Carriers in the Face of an Admission of Respondeat Superior*, 10 Wyo. L. Rev. 229, 241 (2010). As the Missouri Supreme Court once stated:

> Vicarious liability or imputed negligence has been recognized under varying theories, including agency, negligent entrustment of a chattel to an incompetent, conspiracy, the family purpose doctrine, joint enterprise, and ownership liability statutes. If all of the theories for attaching liability to one person for the negligence of another were recognized and all pleaded in one case where the imputation of negligence is admitted, the evidence laboriously submitted to establish other theories serves no real purpose. The energy and time of courts and litigants is unnecessarily expended. In addition, potentially inflammatory evidence comes into the record which is irrelevant to any contested issue in the case. Once vicarious liability for negligence is admitted under *respondeat superior,* the person to whom negligence is imputed becomes strictly liable to the third party for damages attributable to the conduct of the person from whom negligence is imputed. The liability of the employer is fixed by the amount of liability of the employee. This is true regardless of the "percentage of fault" as between the party whose negligence directly caused the injury and the one whose liability for negligence is derivative.

*McHaffie*, 891 S.W.2d at 826 (internal citations omitted).

Under the non-preemption rule, "the employer's admission to the existence of an agency relationship from which vicarious liability may arise does not supplant the claim that the employer's own negligence, independent of the negligence of the employee, may have caused or contributed to the injury." *Allgeier*, 433 S.W.3d at 337. This is because the employer's negligence in hiring, training, retaining, or supervising an employee is regarded as supporting a theory of liability "that is distinctly different from . . . the negligence of the employee whose conduct directly caused the injury." *Id.* at 334. Indeed, in those jurisdictions that follow the non-preemption rule, the legal theories supporting claims of independent negligence do "not rest on the employer-employee relationship, but rather involve the employer's *own* negligence in entrusting, hiring, supervising, training, or retaining an employee with knowledge, either actual or constructive, that the employee posed

a risk of harm to others." *Poplin v. Bestway Express*, 286 F.Supp.2d 1316, 1319 (M.D. Ala. 2003) (emphasis added) (citation omitted). As one commentator has observed, the fact that an independent negligence claim against the employer is contingent upon conduct of the employee does not mean that the employer's conduct does not represent a source of independent fault:

> It is true--most of the time--that absent negligent conduct on the part of the employee, a direct negligence claim against the employer is impossible. But this is not because non-negligence on the employee's part results in no imputed negligence; rather, the direct negligence claim is impossible in those circumstances because a finding of employee non-negligence means that there is no proximate cause, no connection that links the employer's independent negligence with the plaintiff's injuries. The more sensible approach is that . . . the employer is not responsible for the negligence of another, but is instead responsible for its own negligence[.]

J.J. Burns, Note, *Respondeat Superior as an Affirmative Defense: How Employers Immunize Themselves from Direct Negligence Claims*, 109 Mich. L. Rev. 657, 668 (2011) (internal footnotes omitted).

Having considered the relative merits of each rule, we are of the opinion that the Defendant Employers' proposed preemption rule is not in accord with our system of comparative fault and thereby inconsistent with existing Tennessee jurisprudence. As such, we hold that an employer's admission of vicarious liability does not bar a plaintiff from proceeding against the employer on independent claims of negligence. As will be explained below, we reject the notion that an independent negligence claim against an employer serves no purpose once the employer has admitted vicarious liability. Further, although we recognize that there is a concern that a jury could become prejudiced by the evidence used to support an independent negligence claim against an employer, appropriate procedural safeguards can be employed by the trial court to mitigate against any potential unfairness.

In support of our conclusion that the preemption rule is not appropriate for Tennessee, we note that under our state law, vicarious liability represents an independent claim that is separate from other theories of liability asserted against a principal. *See Harper v. Churn*, 83 S.W.3d 142, 146-48 (Tenn. Ct. App. 2002) (involving the assertion of a negligent entrustment claim and a vicarious liability claim at trial). The successful maintenance of an independent negligence claim against an employer may be factually dependent on the negligence of an employee, but liability is not imputed by virtue of the employer-employee relationship. Rather, liability is established because the acts of the *employer* fall below the applicable standard of care that is required. *See, e.g.*, *Britt v. Maury Cnty. Bd. of Educ.*, No.

M2006-01921-COA-R3-CV, 2008 WL 4427190, at \*4 (Tenn. Ct. App. Sept. 29, 2008) (holding that a plaintiff's negligent hiring claim warranted dismissal when the plaintiff failed to show that the hiring of the employee fell below any recognized standard of care). The notion that an employer's independent negligence can constitute a source of fault for a plaintiff's injuries is an important one. Indeed, it bears directly on the soundness of rejecting the preemption rule in comparative fault jurisdictions such as ours.

It has been noted that the preemption rule was "first formed and adopted in an environment of contributory negligence." Burns, *supra*, at 662. If Tennessee operated as a contributory negligence jurisdiction, the argument for the preemption rule would be persuasive in those cases where a valid punitive damages claim was not at stake. Pursuing an independent negligence claim against an employer really would serve no purpose once an employer had admitted vicarious liability. As one court previously explained in a case involving the assertion of a negligent entrustment claim:

> The rationale of [the preemption rule] is very powerful in a contributory negligence jurisdiction. In such a jurisdiction, the entrustee-agent will be either totally liable for plaintiff's damages or not at all liable for plaintiff's damages. If the entrustee is not at all liable for plaintiff's damages, whether it is because the entrustee was not negligent or the plaintiff was contributorily negligent, the entrustor-principal cannot be liable for any part of plaintiff's injuries under either the respondeat superior theory or the negligent entrustment theory. If on the other hand the entrustee was liable and the entrustor's responsibility for the acts of the agent admitted, the entrustor-principal would be liable under the respondeat superior theory. Under the latter circumtances, it is unnecessary to determine whether the entrustor-principal was also liable under the negligent entrustment theory as the amount of plaintiff's recovery under that theory would be identical to the amount of plaintiff's recovery under the respondeat superior theory. Because it is unnecessary, and because the evidence of negligent entrustment tends to be highly prejudicial, [the preemption rule] makes eminent sense in a contributory negligence jurisdiction.

*Lorio v. Cartwright*, 768 F.Supp. 658, 660 (N.D. Ill. 1991).

The same court noted, however, that the reasoning for the preemption rule "loses much of its force" under a comparative negligence regime. *Id.* As it explained:

> Under comparative negligence, it is necessary for a trier of fact to determine percentages of fault for a plaintiff's injuries attributable to the negligence of

plaintiff, the negligence of each defendant, and the negligence of other non-parties.

. . . .

It would not be possible for a finder of fact to make the necessary determination of degrees of fault without having before it the evidence of the entrustor-principal's negligence in entrusting the vehicle to the entrustee-agent.

*Id.* at 660-61.

Ever since the seminal decision in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), Tennessee courts have operated under a modified comparative fault system where a plaintiff can recover so long as the plaintiff's negligence is less than the combined fault of all tortfeasors. *Id.* at 58. Under this system, liability and fault are closely linked, as our Supreme Court "felt that linking liability with fault best achieved the concepts of fairness and efficiency." *White v. Lawrence*, 975 S.W.2d 525, 532 (Tenn. 1998) (Drowota, J., dissenting). If we adopted the preemption rule, we would effectively "force a jury to allocate fault between parties who were not wholly responsible." *Carroll v. Whitney*, 29 S.W.3d 14, 19 (Tenn. 2000). Although this would not be of any consequence to a plaintiff's recovery in cases where a plaintiff's comparative fault is not at issue, it is certainly significant when a plaintiff's comparative fault is raised as a defense. Indeed, "if a party's negligence is taken out of the equation, the other parties necessarily have to fill in the vacuum that is left by the absent party." Burns, *supra*, at 671. This can have profound consequences in a jurisdiction such as ours where plaintiffs are denied any recovery if their fault equals or exceeds 50%. Accordingly, it is incorrect to suggest that an independent negligence claim against an employer serves no purpose once the employer has admitted vicarious liability. Although there is no doubt that the amount of compensatory damages sustained by a plaintiff is fixed, a plaintiff's *ability* to recover for his or her injuries is certainly impacted by removing an alleged tortfeasor from the allocation of fault. Moreover, removing an employer from the fault apportionment process subjects other defendants to potentially assume a greater percentage of liability than they would otherwise be assigned if the jury were able to consider the alleged fault of the employer. *Id.* at 665.

In truth, the preemption rule does not shield the jury from unnecessary evidence. Instead, it inappropriately withholds consideration of an actor's alleged legal fault. This is contrary to justice and is an affront to the basic principle that "the plaintiff is in control of her own case and can proceed as she sees fit." *Smith v. Methodist Hosps. of Memphis*, 995 S.W.2d 584, 591 (Tenn. Ct. App. 1999). As the South Carolina Supreme Court opined when it rejected the preemption rule:

[I]t is a rather strange proposition that a stipulation as to one cause of action could somehow "prohibit" completely the pursuit of another. A plaintiff may, in a single lawsuit, assert many causes of action against a defendant. The considerations limiting a plaintiff's available causes of action in the typical case are that the plaintiff must be able to demonstrate a prim[a] facie case for each cause of action and that a plaintiff may ultimately recover only once for an injury. Thus, although the Insurer's stipulation as to vicarious liability ensures that the Insurer (standing in the shoes of [the defendant employer]) will be liable for the [plaintiff's] injuries, that is the only practical effect of the stipulation. Such practical considerations, in our opinion, ought not require the preclusion of a claim based upon [the defendant employer's] alleged negligence in hiring[.]

*James v. Kelly Trucking Co.*, 661 S.E.2d 329, 332 (S.C. 2008).

Although the adoption of the preemption rule is not consistent with our comparative fault system, it is also potentially problematic as a matter of judicial economy. We fear that an employer that pays a plaintiff's damages pursuant to a successful vicarious liability claim could then seek contribution from the defendant employee. Despite the Tennessee Supreme Court's initial pronouncement in *McIntyre* that the doctrine of joint and several liability was "obsolete," *McIntyre*, 833 S.W.2d at 58, there are instances where it still exists, making contribution an appropriate remedy. Indeed, in *General Electric Co. v. Process Control Co.*, 969 S.W.2d 914 (Tenn. 1998), our Supreme Court stated as follows:

> *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), did not "completely abolish the remedy of contribution." *Bervoets v. Harde Ralls Pontiac–Olds, Inc.,* 891 S.W.2d 905, 907 (Tenn. 1994). Contribution may still be viable in the following limited circumstances:
>
> . . . .
>
>> [C]ases in which joint and several liability continues to apply under doctrines such as the family purpose doctrine, cases in which tortfeasors act in concert or collectively with one another, **cases in which the doctrine of respondeat superior permits vicarious liability due to an agency-type relationship**, or in the "appropriate" products liability case, *see Resolution Trust Corp. v. Block,* 924 S.W.2d 354 (Tenn. 1996); *Camper v. Minor,* 915 S.W.2d 437 (Tenn. 1996); *Owens v. Truckstops of Amer.,* 915 S.W.2d 420 (Tenn. 1996)[.]

*Id.* at 916 (emphasis added). Assuming that an employer does pursue a contribution action, the factfinder will then have to apportion fault between the employer and employee. *See*

Tenn. Code Ann. § 29-11-102 (2012) (providing a right of contribution "in favor of a tort-feasor who has paid more than the proportionate share of the shared liability between two (2) or more tort-feasors for the same injury or wrongful death").  This would be a waste of judicial resources where a plaintiff has attempted to recover on account of an employer's alleged fault in the underlying lawsuit.  If we allow a jury to apportion fault in a contribution action, they are capable of doing so in the tort action brought by the original plaintiff.

Although the preemption rule endeavors, in part, to guard juries from being prejudiced by evidence that could be used to support independent negligence claims against an employer, *see, e.g.*, *Clooney v. Geeting*, 352 So. 2d 1216, 1220 (Fla. Dist. Ct. App. 1977) ("Since the stricken counts impose no additional liability but merely allege a concurrent theory of recovery, the desirability of allowing these theories is outweighed by the prejudice to the defendants."), this fear of prejudice is not a sufficient justification for eliminating an entire cause of action from the court.  Assuming that the evidence used to support an independent negligence claim against the employer is potentially prejudicial, we note that trial judges are in a position to ensure that the proceedings conducted are fair to all parties.  Indeed, trial judges may explain to the jury the permissible use of the evidence that is submitted.  The South Carolina Supreme Court previously explained the protections that exist with regard to this issue:

> [W]e think the argument that an independent cause of action against an employer must be precluded to protect the jury from considering prejudicial evidence presumes too much.  Our court system relies on the trial court to determine when relevant evidence is inadmissible because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  Rule 403, SCRE.[5]  Similarly, we rely on the trial court to craft instructions describing what a jury may or may not infer from a particular piece of evidence, and we grant the trial court discretion to give such instructions to the jury at the time such evidence is introduced, when charging the jury at the close of the case, or at any proper time in between.  In our view, the argument that the court must entirely preclude a cause of action to protect the jury from considering prejudicial evidence gives impermissibly short-shrift to the trial court's ability to judge the admission of evidence and to protect the integrity of trial, and to the jury's ability to follow the trial court's instructions.

*James*, 661 S.E.2d at 331.

---

[5] We observe that Rule 403 of the South Carolina Rules of Evidence is identical to Rule 403 of the Tennessee Rules of Evidence.

Fear of prejudice alone is simply not a valid reason for eliminating what is an otherwise valid cause of action. If the trial court believes that jury instructions are insufficient to guard against potential prejudice, it may always bifurcate the proceedings pursuant to Rule 42.02 of the Tennessee Rules of Civil Procedure. Indeed, under that rule:

> The court for convenience or **to avoid prejudice** may in jury trials order a separate trial of any or more claims, cross-claims, counterclaims, or third-party claims, or issues on which a jury trial has been waived by all parties. For the same purposes the Court may, in nonjury trials, order a separate trial of any one or more claims, cross-claims, counterclaims, third-party claims, or issues.

Tenn. R. Civ. P. 42.02 (emphasis added). Several commentators have identified bifurcation as a procedural tool that addresses concerns of prejudice, while preserving a plaintiff's legitimate cause of action. *See* Blitz, *supra*, at 545; Burns, *supra*, at 678-79; *see also* Mincer, *supra*, at 263-64 (touting the merits of the preemption rule but arguing that the proceedings should be bifurcated in the limited instances where a direct negligence claim is allowed to proceed to trial).

One article, in attempting to reconcile the viability of a negligent entrustment claim with an employer's admission of vicarious liability, described the mechanics of the procedure as follows:

> [P]laintiff would first attempt to prove that the driver's negligence was the proximate cause of his injury. The jury would decide this issue without having heard evidence of the driver's reckless character. If the jury found the driver not negligent, the case would be over, inasmuch as the entrustee's negligence as the proximate cause of plaintiff's injury is an essential part of the theory of negligent entrustment. If, however, the jury found the driver negligent, thus also finding the defendant [employer] vicariously liable in accordance with his admission, plaintiff would then be allowed to prove negligent entrustment, preferably without delay and to the same jury. At this time evidence of the driver's general recklessness, incompetence, or inexperience, and the defendant's knowledge thereof, would be admissible.

Blitz, *supra*, at 545 (internal footnote omitted). Bifurcating the proceedings eliminates any potential that the independent negligence claims would prejudicially impact the jury's determination of the defendant employee's legal culpability. Moreover, it rightfully preserves the plaintiff's ability to pursue all the legal rights that are available.

A few points deserve mentioning if a trial court chooses to bifurcate the proceedings out of a concern of prejudice. First, it is advisable that the trial court permit the jury to assess damages at the end of the first phase of trial. A plaintiff's compensatory damages are fixed, and they neither increase nor decrease by maintaining the additional negligence claim against the employer. By permitting an assessment of damages at the end of the first phase of trial, the trial court would alleviate any concern that the plaintiff's independent negligence claim somehow fostered a duplicative recovery. Second, the jury's allocation of fault should not occur until the end of the second phase of trial. Only at that point will all alleged fault have been considered by the jury, thereby allowing the jury to properly weigh the relative fault of all actors. In the event a plaintiff's independent negligence claims against the employer are also used to support a valid punitive damages claim, we note that the second phase of trial will require additional furcation. *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992) (holding that liability for punitive damages must first be established in a separate proceeding before the amount of punitive damages can be determined).

Given our opinion that the preemption rule should not be adopted in Tennessee, we conclude that the trial court erred in dismissing Ms. Jones' asserted claims of direct negligence against the Defendant Employers. An admission of vicarious liability does not insulate an employer from defending independent negligence claims, and Ms. Jones should not be prevented from pursuing her claims. With that said, it is important to note that our review on appeal has been limited. We do not hold that Ms. Jones' claims have substantive validity, and we do not express an opinion on whether Ms. Jones will be able to adduce proof sufficient to support them. We merely hold that it was improper to dismiss the direct negligence claims against the Defendant Employers on account of the preemption rule.[6] Whether Ms. Jones' claims have any merit is subject to further proceedings in the trial court.

In light of our disposition herein, the second issue for which we granted review is largely pretermitted. The second issue concerns whether the trial court erred in dismissing all claims for compensatory damages against the Defendant Employers while allowing a claim for punitive damages to nonetheless proceed. In their briefs, the parties have addressed this

---

[6] As we previously alluded to, it is clear to us that the trial court was either attempting to adopt the preemption rule or was attempting to adopt the preemption rule but nonetheless recognize an exception for punitive damages. Given our holding that the preemption rule is not viable in Tennessee, it is obvious that dismissal of the direct negligence claims was improper on either basis. Indeed, even if we surmise that the court was attempting to adopt the rule but honor a punitive damages exception, we note that states that recognize such an exception to the rule *allow* the maintenance of a direct negligence claim against the employer when a valid punitive damages claim is present. Of course, because we conclude that Tennessee does not recognize the preemption rule, there is no need for an exception. There simply was no basis to dismiss the independent claims against the Defendant Employers on account of their admission that they were vicariously liable for Ms. Windham's negligence.

- 13 -

issue from two angles. First, the parties have suggested that the trial court's ultimate disposition is inconsistent inasmuch as the punitive damages claim against the Defendant Employers survived summary judgment without an accompanying claim supporting any compensatory damages against them. We have discussed this inconsistency previously in this Opinion. There is no question that the punitive damages claim against the Defendant Employers could not stand on its own absent an award of "actual damages," *see B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 223 (Tenn. Ct. App. 2004), and as such, we agree with both parties that the trial court's ultimate disposition is untenable. There is no basis for a single, stand-alone punitive damages claim by itself. Of course, in light of our determination that the trial court's dismissal of the direct negligence claims against the Defendant Employers should be reversed, this incongruity problem no longer exists.

The parties have also addressed the second presented issue from the standpoint of whether the direct negligence claims asserted against the Defendant Employers are viable in light of a punitive damages exception to the preemption rule. Given our holding that the preemption rule is inconsistent with current Tennessee law, it is not necessary to address this question. If there is not a rule barring a claim, any potential exceptions to the rule are irrelevant. Indeed, because we conclude that the preemption rule does not govern, Ms. Jones' claims should not have been dismissed.

Although the Defendants have additionally requested that we review whether Ms. Jones' claim for punitive damages should have been dismissed at summary judgment, this is not an issue for which we granted this Rule 10 extraordinary appeal. "For extraordinary appeals, the issues are limited to those specified in this court's order granting the extraordinary appeal." *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 914 (Tenn. Ct. App. 2000) (citation omitted). Accordingly, we decline to review the trial court's decision to allow the punitive damages claim to survive summary judgment.

## Conclusion

Because the preemption rule does not apply in Tennessee, an employer's admission of vicarious liability does not insulate the employer from other legal claims asserted by a plaintiff. We must therefore reverse the trial court's dismissal of the direct negligence claims asserted against the Defendant Employers. The costs of this appeal are assessed against the Appellees Remark Chism, Kimberly Chism, and Shavonna Rachelle Windham, for all of which execution may issue if necessary. This case is remanded to the trial court for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

- 14 -